# IDA B. SALTWICK AND ANOTHER v. MODERN WOODMEN OF AMERICA.[1]

March 25, 1938.

No. 31,392.

*Courtney & Courtney,* for appellants.

*George G. Perrin, George H. McDonald, Gillette, Nye, Harries & Montague,* and *W. O. Bissonett,* for respondent.

HILTON, JUSTICE.

Decedent Andrew Saltwick, living in Duluth, Minnesota, was struck by a car November 17, 1936, and died in a hospital in West Duluth the following day. The defendant is a fraternal benefit society, and deccased had been a member of the organization for several years. At the time of his death he was 77 years of age and

[1]Reported in 278 N. W. 513.

held two benefit certificates issued by the defendant. One of the certificates in the amount of $400 was paid-up insurance. The other, for $1,600, required the payment of a monthly assessment or premium of $13. Plaintiffs, daughters of the decedent, brought this action to recover on the $1,600 certificate, in which they were named as beneficiaries. For convenience they will hereinafter be referred to as Marie and Ida. The defense claimed was that the certificate had lapsed and that deceased had died while in suspension by reason of his failure to pay the required assessments. The court below directed a verdict in favor of defendant at the close of the testimony, and this appeal was taken from an order denying plaintiffs' motion for a new trial.

The insurance contract between deceased and the defendant consisted of the benefit certificate and the application therefor, defendant's articles of association, and the by-laws of the society. The latter contain the usual provision against waiver of by-laws by any officer of the defendant or its local camps. One by-law provides that a member who fails to pay his dues or assessments on or before the last day of the month in which they are due shall thereupon, *ipso facto*, become suspended, and all benefit certificates held by him shall be absolutely null and void. There are two by-laws relating to reinstatement of members in suspension. The first provides that a suspended member in sound health, upon payment of all delinquent and current dues and assessments at any time within three months from the date of suspension, shall thereby become reinstated. The second provides that a member suspended more than three, but less than six, months may be reinstated by furnishing a certificate of sound health from the local camp physician or a reputable practicing physician, and the payment of delinquent and current dues and assessments. In such cases it is further provided that the reinstatement shall not be effective until the certificate of sound health is forwarded to the national secretary and approved by the supreme medical directors.

For some six years prior to his death deceased was suspended 23 times for nonpayment of dues and assessments. In all but one of

these instances he remained in suspension for less than three months and was automatically reinstated by payment of his delinquency.

Marie, a teacher in the Duluth public schools, took care of the payments for her father. The assessment for July, 1936, was not paid when due, and deceased was suspended August 1, 1936. August 15, 1936, defendant's national secretary mailed a notice of suspension to deceased at his address in Duluth. Deceased continued in suspension during August, September, and October, the assessments for those months not having been paid. The morning of November 18, 1936, the day after her father had been injured, Marie received her salary check and was excused from her teaching duties by her principal. She cashed the check and then went to the Woodmen Hall, the building occupied by defendant's local camp, in Duluth. She left $67, the amount of deceased's delinquent dues and assessments, with a Mr. Dougal, the janitor and custodian of the building, and he made out a receipt therefor on a piece of scratch paper.

The secretary of the local camp, Mr. Sullivan, had his office in the Woodmen Hall, and was the authorized agent for the collection and receipt of the payments required of members. His office hours, for the purpose of performing his duties as secretary, were from seven to nine o'clock Monday, Wednesday, and Friday evenings. Marie had been making all payments to him for a long time and knew that he was not there during the day. She testified that she always paid by mailing a check to Mr. Sullivan or by going to his office in the evening and paying cash. With this one exception, she had never made a payment to Dougal.

Deceased died about three o'clock in the afternoon of November 18. That evening Dougal gave Mr. Sullivan the $67 payment which he had received from Marie the same morning. Sullivan entered the payment in his books and made out a receipt and stub therefor. It does not appear that he made any effort to deliver the receipt. He testified that he did not know of deceased's accident at this time. He claimed that when he arrived home the evening of the 18th he first learned of the accident through an item in the local newspaper, and the following morning, over the radio, heard of Mr. Saltwick's

death. He returned the $67 to Marie at the Saltwick home the evening of November 19 and assisted her in making out a proof of death as required by the terms of the $400 paid-up certificate. This proof was later accepted by defendant, and the $400 certificate was paid. The books of the local camp, kept by Sullivan, were introduced in evidence, and it appears that all entries relating to the November 18 payment made by Marie were removed by acid or an eraser, and the payment of another member was recorded in the place of these entries.

At the time he was injured deceased had been in suspension for more than three months, and, by the terms of the by-laws, was required to furnish a certificate of sound health with payment of his delinquency in order to effect his reinstatement. No effort was made to comply with this requirement at the time Marie made the November 18 payment, and of course such compliance was then impossible. The claim is that the requirement of the sound health certificate and the by-laws relating to the suspension and reinstatement of members were waived. The trial judge was of the view that the evidence was insufficient to sustain a finding of such waiver, and this ruling raises the principal question for determination on this appeal.

To begin with, it is certain that Dougal, janitor and custodian of the Woodmen building, had no authority to waive any by-law of the defendant, and this is true although he was permitted to accept dues left with him during the day by the members. No one dealing with him could reasonably believe that he did have such authority, and plaintiffs do not seriously argue otherwise. Furthermore, there is no proof, or offer to prove, that Dougal knew that deceased was in suspension and that a certificate of sound health was required. It is elementary, of course, that there could be no waiver without such knowledge.

It is claimed that the record of the November 18 payment, made by Sullivan in the books of the local camp, constituted such waiver. We do not agree. Aside from the question of his authority to waive, the evidence relied on is not sufficient to support a finding of waiver. Sullivan was given no opportunity to demand the cer-

tificate of sound health. Before he could do so, he learned of Mr. Saltwick's injury and death and immediately returned the payment. The entries made by him are not inconsistent with an intention to ask for the health certificate. He made no effort to deliver the receipt by mail or otherwise. If he had, then it could safely be said that he thereby indicated an intention not to require the health certificate. However, it can just as well be inferred that he entered the payment in his books in this instance merely to keep an account of the money in his hands and with the intention of sending it to the defendant after he could demand, and had received, the required certificate.

There is another good reason, apparently overlooked by counsel, why the entries made by Sullivan could not be held a waiver of the certificate in question. Whatever his authority to waive the reinstatement requirements might be while a suspended member was living, as far as Sullivan was concerned, acceptance of such member's delinquent assessments after his death would not constitute a waiver of conditions for reinstatement which would retroactively revive the insurance. 45 C. J. p. 126, § 107, and cases cited. Authority of the local camp or the national body to waive those conditions under such circumstances is not a matter of present concern. Sullivan had no opportunity to waive the giving of the health certificate prior to the time the payment came into his hands, and by that time Mr. Saltwick was dead. Sullivan's conduct thereafter did not, and under the circumstances could not, operate as a waiver and effect the reinstatement of the deceased.

Plaintiffs contend that the by-laws relating to the suspension and reinstatement of members were waived by the custom or course of dealing engaged in by Sullivan and the local camp with reference to the payment of dues and assessments, and that deceased was therefore not in suspension at the time payment was made November 18 and the time of his death. The trial court correctly ruled that the evidence was not sufficient to sustain this claim. There is no such conduct which constituted the waiver asserted. More important still, it conclusively appears that deceased and Marie were not misled thereby. Defendant mailed the notice of suspension to

deceased, and this notice included a warning of the effect of such suspension and the manner in which reinstatement could be effected. The notice was correctly addressed, with defendant's return address on it, but it was not returned. The only inference reasonably possible is that it was received but ignored. There was no prior conduct of Sullivan or the local camp which would justify deceased in believing that this notice did not mean exactly what its language imported. Marie explicitly testified that she knew her father was in suspension. They were both bound by the notice and defendant's by-laws, and under the circumstances there was no room for a finding that any custom or course of dealing existed upon which they could have relied and been misled thereby into any false sense of security.

On one previous occasion deceased had been suspended for more than three months. In this instance the delinquency was paid by Ida's mailed check within just a few days after the three-month period of suspension had expired. Sullivan accepted the check without requiring the health certificate. However, this one act of indulgence cannot be construed as such a settled custom or course of dealing as to constitute a future waiver of the suspension provisions and reinstatement requirements of the by-laws. 5 Cooley, Briefs on Insurance (2 ed.) p. 4393; 3 Couch, Cyc. of Ins. Law, p. 2253, § 681a. And, as already indicated, the evidence shows that both deceased and Marie knew that the former was in suspension, and there was no reliance on any alleged custom or course of dealing inconsistent with the by-laws.

There is nothing to the claim that defendant, by accepting the proof of death and paying the $400 certificate, recognized deceased as being in good standing at the time of his death and thereby waived the defense relied upon in this action or estopped itself from now asserting that deceased was not in good standing. The $400 certificate was paid-up insurance. Nothing more was due thereon, and defendant had no choice but to accept the proof of death and pay the certificate. Concerning that certificate, deceased was in good standing, and defendant's payment of the same went no further than to admit that limited fact.

Plaintiffs claim that although they may not be entitled to recover the death benefit provided by the $1,600 certificate because of deceased's suspension, he nevertheless, at the time of his death, had a vested interest in certain funds of the defendant by virtue of various "extended insurance," "cash surrender," and "paid up policy" option provisions in the insurance certificate, and that neither he nor his beneficiaries could be deprived of that interest by his suspension. Failure of the court to allow recovery in this action of the claimed amount of this interest is assigned as error. In this connection a copy of defendant's financial statement for the year 1935 was offered in evidence and, upon timely objection, excluded as immaterial. This ruling is also assigned as error. For some reason, defense counsel have ignored these assignments of error and the claims made therein. However, these contentions are without merit as far as this appeal is concerned. The asserted right to any recovery other than the death benefits provided by the $1,600 certificate was not involved in the action below or properly presented to the court. The pleadings do not contain even a remote suggestion of such a claim, and the financial statement was properly excluded as immaterial. The question was not before the court below and is not involved in this appeal.

The few remaining assignments of error do not require detailed discussion. They are without merit and do not involve any question which could possibly affect the result. Our conclusion is that deceased died while in suspension, and under the terms of the insurance contract no recovery of death benefits can be had thereon.

Affirmed.